UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
UNITED STATES OF AMERICA,

v.                                                                          **MEMORANDUM & ORDER**
                                                                            15-CR-0287-18 (WFK)
SILBERT NICHOLSON,

       Defendant.
-----------------------------------------------------------X

**WILLIAM F. KUNTZ, II, United States District Judge:**

On October 10, 2017, Silbert Nicholson pleaded guilty to a lesser-included offense within Count Five of the Superseding Indictment. The Court now sentences him and provides a complete statement of reasons pursuant to 18 U.S.C. § 3553(c)(2) of those factors set forth by Congress and the President and contained in 18 U.S.C. § 3553(a). For the reasons discussed below, Silbert Nicholson is hereby sentenced to 74 months of incarceration, 3 years of supervised release, and a $100.00 special assessment.

## BACKGROUND

On July 15, 2015, the United States filed a seventy-five count Superseding Indictment against twenty-three defendants, including Silbert Nicholson ("Defendant"). *See* Superseding Indictment, ECF No. 48. On October 10, 2017, Defendant pleaded guilty to a lesser-included offense within Count Five of the Superseding Indictment, which charged a Narcotics Trafficking Conspiracy. *See* Plea Agreement ¶ 1, ECF No. 473.

The Court hereby sentences Defendant and sets forth its reasons for Defendant's sentence using the rubric of the 18 U.S.C. § 3553(a) factors pursuant to 18 U.S.C. § 3553(c)(2).

## DISCUSSION

### I. Legal Standard

18 U.S.C. § 3553 outlines the procedures for imposing sentence in a criminal case. If and when a district court chooses to impose a sentence outside of the Sentencing Guidelines range, the court "shall state in open court the reasons for its imposition of the particular sentence, and . .

. the specific reason for the imposition of a sentence different from that described" in the Guidelines. 18 U.S.C. § 3553(c)(2). The court must also "state[] with specificity" its reasons for so departing "in a statement of reasons form[.]" *Id.*

"The sentencing court's written statement of reasons shall be a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Davis*, 08-CR-0332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.). Section 3553(a) provides a set of seven factors for the Court to consider in determining what sentence to impose on a criminal defendant. The Court addresses each in turn.

II. Analysis

### A. The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant

The first § 3553(a) factor requires the Court to evaluate "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

Defendant was born on June 4, 1992, in Brooklyn, New York. Presentence Report ("PSR") ¶ 58, ECF No. 531. He was born to the non-marital union of Silbert Nicholson and Annette Robinson. *Id.* His father resides in Jamaica, West Indies, and is in good health. *Id.* Defendant has not been in contact with the father since 2014. *Id.* Defendant's mother resides at the address of record, is employed as a home health attendant, and is in good health. *Id.* She is aware of Defendant's arrest in this case and is supportive. *Id.*

Defendant has six maternal half-siblings, all of whom reside in Brooklyn, New York. *Id.* ¶ 59. All of Defendant's maternal half-siblings are aware of his arrest in this case and are

supportive. *Id.* Defendant has two paternal half-siblings, a brother he has never met and a sister. *Id.* ¶ 60. His sister remains supportive. *Id.*

Defendant's parents ended their relationship when Defendant was an infant, but co-parented Defendant until his father was deported from the United States to Jamaica in 2011. *Id.* ¶ 61. Defendant has only spoken to his father several times since his deportation, and was last in contact with him in 2014. *Id.* Defendant was raised under average economic circumstances, with his basic needs met consistently. *Id.* Soon after his parents' separation, Defendant's mother became involved in a relationship with Narrista Heslop. *Id.* Mr. Heslop helped Defendant's mother raise Defendant and was a good father-figure for Defendant. *Id.* He passed away in 2002 after being shot; Defendant is unaware of the circumstances. *Id.* According to an April 12, 2002 article in the New York Daily News, Mr. Heslop got into a dispute with an individual who ultimately chased him into a barbershop and fatally shot him; the reason for the dispute was not established at the time of the article. *Id.* Defendant reported no history of abuse of any kind. *Id.* He noted, however, that he was shot in the right leg during 2011 by a stray bullet in his neighborhood, which was a traumatic experience for him. *Id.*

Defendant has resided in Brooklyn his entire life and at the address of record since July 2013. *Id.* ¶ 62. Defendant has never been married and has no children. *Id.* ¶ 63. Since 2015, he has been in a relationship with Rodeline Fontus, whom he has known since 2011. *Id.* Ms. Fontus, age 24, resides in Brooklyn, attends school, and works at a tuxedo retail store. *Id.* She is in good health. *Id.* She is aware of Defendant's arrest in this case and is supportive. *Id.*

Defendant attended Paul Robeson High School, in Brooklyn, New York, through the 11th grade. *Id.* ¶ 70. Defendant reported he left school prior to graduating because after being shot in 2011, he no longer felt safe attending school. *Id.* Defendant reported to Probation he has never

3

had a job, and has always been financially supported by his mother. *Id.* ¶ 71. When asked how he spent his time when not attending school or working, he advised that he played sports. *Id.*

Since he has been in custody at the Metropolitan Detention Center (MDC) in Brooklyn, New York, Defendant has participated in educational/vocational programs, including health education, origami, card making, art, introduction to chess, chess level 2, basic fitness, and math. *Id.* ¶ 64. He also completed the GED ready test on January 26, 2018, but did not pass. *Id.* He has been given work assignments, including food service, but has been unassigned since February 5, 2018. *Id.* He has been involved in five disciplinary incidents, including refusing to obey orders, possessing drugs/alcohol, use of drugs/alcohol, and possessing a cellphone. *Id.*

Defendant is currently healthy and reported no history of any chronic or serious health conditions. *Id.* ¶ 66. As noted above, he was shot in 2011, and he continues to experience occasional pain in his right leg, but this does not interfere with his daily functioning and he takes no medication. *Id.* Defendant reported no history of mental or emotional health problems. *Id.* ¶ 67.

Defendant began smoking marijuana at age 13, and has smoked on and off from that time up until his arrest in this case. *Id.* ¶ 68. He noted that during some time periods, he smoked marijuana on a daily basis. *Id.* In 2009, he attended a five-month outpatient drug treatment program at Fortune Society, in Queens, New York. *Id.* From May 2010 to June 2010, he began an inpatient program at an unrecalled location in Manhattan, New York, but he did not like the program and did not complete it. *Id.* From November 2010 to January 2011, he attended an inpatient program at Starhill Palladia, in the Bronx, New York. *Id.* Defendant noted he had returned to smoking marijuana since his attendance at these programs, so he is open to additional treatment in the future. *Id.* At the time of his bail interview with Pretrial Services, Defendant

said he last smoked marijuana one week prior to his arrest for the instant offense. *Id.* Defendant reported being a social drinker, consuming alcohol on weekends and on special occasions. *Id.* ¶ 69.

Defendant has a prior conviction for robbery in the third degree in Kings County, New York, which he committed at the age of sixteen in 2009. *Id.* ¶ 51. On September 9, 2011, he was sentenced to one year of custody. *Id.* According to the NYPD arrest report, on April 13, 2009, Defendant and others approached the complainant from behind and forcibly removed the complainant's property from the complainant's sweater pocket, while stating, "Don't move or I'm a stab you." *Id.* The victim's cellphone was recovered from Defendant's hand. *Id.*

Defendant was also arrested on October 10, 2014, on three counts of possession with intent to deliver, two counts of conspiracy, and delivery of a controlled substance within 1,000 feet of a school. *Id.* ¶ 56. According to the Probation Department in the Northern District of West Virginia, Defendant was originally charged in Berkeley County Magistrate Court in numerous separate cases, but the cases were bound over to the Circuit Court, where they were later dismissed. *Id.* Probation notes Defendant's involvement in the instant offense continued while he was on bail release in connection with this West Virginia arrest. *Id.*

Regarding the instant offense, Defendant was a member of the Outlaw Gangsta Crips ("OGC") and the Shoota Gang ("SG"). *Id.* ¶ 35. SG was an offshoot of the OGC which included members and associates of the OGC as well as members and associates of other gangs, including the Eight Trey, Bosses In Business, and the Bloods. *Id.* ¶¶ 2-4. Members and associates of the OGC have engaged in drug trafficking, fraud, firearms trafficking and promoting prostitution, and have committed acts of violence, including murder, attempted murder, robbery and assault, as well as other crimes. *Id.* The purposes of the OGC included

enriching the gang; promoting and enhancing the gang's prestige, reputation, and position among rival gangs; preserving and protecting the gang's power, territory, and criminal ventures; maintaining fear of the gang in their victims and rivals; and concealing the gang's criminal activity from law enforcement. *Id.* ¶ 4.

Defendant and others sold cocaine base in West Virginia that they acquired in Brooklyn as members of the OGC, including drugs maintained at a stash house between August 9, 2013 and May 12, 2015. *Id.* ¶ 35. According to the Government, Defendant is accountable for distributing at least 280 grams of cocaine base and was a street-level narcotics distributor in the instant offense. *Id.* Defendant was arrested on July 16, 2015 and has been in custody since his arrest. *Id.* at 1.

**B. The Need for the Sentence Imposed**

The second § 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

Defendant's crime both provided dangerous and illegal drugs to his community and helped to fund unlawful gang activity. The Court's sentence recognizes the seriousness of this offense and punishes Defendant accordingly. It seeks to deter Defendant from further criminal activity and encourages him to sever his ties to the OGC and the SG. More generally, the Court's sentence sends a message to other gang members that a life of crime carries a risk of

punishment that outweighs any potential gains. Finally, it also considers Defendant's family support.

### C. The Kinds of Sentences Available

The third § 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant. 18 U.S.C. § 3553(a)(3).

Defendant pleaded guilty to one count of Narcotics Trafficking Conspiracy, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(C). He faces a maximum term of imprisonment of twenty years. *See* 21 U.S.C. § 841(b)(1)(C). Defendant also faces: a minimum term of supervised release of three years, 21 U.S.C. § 841(b)(1)(C); not less than one and no more than five years of probation, 18 U.S.C. § 3561(c)(1); a maximum fine of $1,000,000.00, 21 U.S.C. § 841(b)(1)(C); and a special assessment of $100.00, 18 U.S.C. § 3013.

### D. The Kinds of Sentence and the Sentencing Range Established For Defendant's Offenses

The fourth § 3553(a) factor requires the Court to discuss "the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines[.]" 18 U.S.C. § 3553(a)(4)(A).

Guidelines § 2D1.1 applies to violations of 21 U.S.C. § 846 and sets a base offense level of thirty for offenses involving at least 280 grams but less than 840 grams of cocaine base. *See* United States Sentencing Commission, *Guidelines Manual*, § 2D1.1(c)(5) (Nov. 2016) ("USSG").

Defendant has clearly demonstrated acceptance of responsibility for the offense. Accordingly, the offense level is decreased by two levels. USSG § 3E1.1(a). Because the Government was notified in a timely manner of Defendant's intention to enter a plea of guilty,

the offense level is decreased by one additional level. USSG § 3E1.1(b). All parties agree Defendant should receive a three-point reduction for acceptance of responsibility. This would bring Defendant's total adjusted level to twenty-seven.

In Defendant's plea agreement, the Government estimated that the Defendant would receive a two-level reduction "for a global resolution pursuant to U.S.S.G. § 5K2.0 . . . only if the conditions set forth in Paragraph 7 [of the plea agreement] are satisfied." Plea Agreement ¶ 2. Paragraph seven, in turn, provided that the reduction would apply only if: 1) nineteen listed defendants entered guilty pleas on or before October 2, 2017; and 2) those pleas were accepted by a United States District Court Judge at the time of the plea allocution or, if the plea was taken by a Magistrate Judge, on or before October 10, 2017. *Id.* ¶ 7. Not all of the listed defendants pled guilty by October 10, 2017, but all defendants have now pled guilty.

In its Guidelines calculation, Probation does not account for any Global Resolution reduction, and arrives at a total adjusted offense level of twenty-seven. PSR ¶ 49. Defendant's criminal history results in a criminal history score of two, establishing a criminal history category of II. USSG Ch. 5, Part A. With a criminal history category of II and a total offense level of 27, the Guidelines imprisonment range is 78 to 97 months. PSR ¶ 76. Probation recommends 78 months custody and three years supervised release, with special conditions. Probation Sentence Recommendation at 1, ECF No. 531-1.

If a two-level Global Resolution reduction applies, Defendant's total adjusted offense level would be 25. With a criminal history category of II, the Guidelines range would be 63 to 78 months. The Government and defense both advocate that this sentencing range should apply. The Government requests the Court impose a term of imprisonment within that range. Gov't

Sentencing Mem. at 1, ECF No. 617. The defense requests the Court impose a below Guidelines sentence of 48 months. Defense Sentencing Mem. at 1, ECF No. 613.

Given a total offense level of 25 and a criminal history category of II, the Guidelines suggest a term of imprisonment of between 63 and 78 months for a total offense level of 25. USSG Ch. 5, Part A. Per the Guidelines, Defendant may also be sentenced to a term of supervised release of three years, id. § 5D1.2(a)(2)1; a fine of between $10,000.00 and $1,000,000.00 for offense level 25, id. §§ 5E1.2(c)(4), (h)(1); and payment of the costs of prosecution, *id.* § 5E1.5. The Guidelines further suggest Defendant is ineligible for probation. *Id.* § 5B1.1, n.2.

### E. Pertinent Policy Statement(s) of the Sentencing Commission

The fifth § 3553(a) factor, requiring the Court to evaluate "any pertinent policy statement . . . issued by the Sentencing Commission," 18 U.S.C. § 3553(a)(5), is not relevant to Defendant's sentencing beyond the above discussed Global Resolution reduction.

### F. The Need to Avoid Unwarranted Sentence Disparities

The sixth § 3553(a) factor requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

Defendant is one of twenty-three defendants in this case, and the Court will craft a unique sentence for each defendant. For the reasons stated in this memorandum and order, and considering the other six § 3553(a) factors, the Court's sentence avoids unwarranted sentence disparities.

---

[1] The Guidelines suggest a supervised release term of one to three years. *See* USSG § 5D1.2(a)(2). However, the statutory minimum is three years. 21 U.S.C. § 841(b)(1)(C).

### G. The Need to Provide Restitution

Lastly, the seventh § 3553(a) factor requires the Court to touch upon "the need to provide restitution to any victims of the offense," 18 U.S.C. § 3553(a)(7), is not applicable in Defendant's case, *see* 18 U.S.C. § 3663.

### CONCLUSION

A sentence of 74 months of incarceration, to be followed by 3 years of supervised release, and a $100.00 special assessment is appropriate and comports with the dictates of § 3553. This sentence is consistent with, and is sufficient but no greater than necessary to accomplish, the purposes of § 3553(a)(2).

The Court expressly adopts the factual findings of the Presentence Investigation Report and addendum thereto and imposes the special conditions of release proposed by the Probation Department.

SO ORDERED.

_____s/WFK_____
HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: September 7, 2018
Brooklyn, New York